. (*) DENNISON & al. versus BENNER.

Persons summoned as trustees to the principal defendant are parties to the suit.

They are parties adverse to the plaintiff.

A creditor brought two separate suits against different persons. In one of the suits, he summoned trustees. He then proposed in writing to another creditor of the same defendants, that he would discharge his said claims, upon receiving, among other things, " an obligation from the adverse parties to forbear any suit or trouble to him on account of his proceedings against them." — *Held*, that an instrument signed by the defendant in one of said suits, containing, first, a formal receipt in full of all demands, and secondly, an agreement that " neither party " should be entered in the suit against the other defendant and trustees, does not constitute the obligation contemplated in the plaintiffs' written proposal.

ON FACTS AGREED.

The plaintiffs, being merchants in Boston, were creditors of one John Benner, against whom they had a suit pending in which his property is attached, and several persons summoned as his trustees. And they have brought this suit against Washington Benner for fraudulently concealing the property of their debtor, John Benner, and in this suit have attached property

and summoned trustees. One Hanson, of Boston, also had a large debt against Washington Benner, who was unable to pay, because his property was attached in this suit.

Hanson thereupon procured an agreement signed by the plaintiffs as follows. — "We have agreed with Mr. J. B. Hanson to settle our claim against John Benner, and discharge the suit against Washington Benner, upon the payment of five hundred and fifty dollars cash, within thirty days, and an obligation from the adverse parties to forbear any suit or trouble to us on account of proceeding against them. Boston, February 15, 1849."

Hanson then came to Maine, and undertook with Washington Benner to discharge the plaintiffs' claims against the Benners, and gave to Washington Benner the following paper: —

"Received of Washington Benner five hundred and fifty dollars, in full discharge of all claims in favor of J. N. Dennison & Co., and against John Benner of Waldoboro'; and the action now pending in favor of *J. N. Dennison & Co.* v. *John Benner*, in D. C. M. D. Lincoln county, is to be entered neither party, and the action of J. N. Dennison & Co. against Washington Benner, now pending in D. C. M. D. Kennebec county, is to be entered neither party; and I, the said J. B. Hanson of Boston, hereby, in consideration aforesaid, obligate myself to the full performance of the above stipulations. Feb. 20, 1849.                    "J. B. Hanson."

Hanson, having returned to Boston, proposed to pay the plaintiffs the $550, and to close the business.

The plaintiffs thereupon wrote an order upon their attorney at Waldoboro', as follows: — "Having made an arrangement to compromise our claim on John Benner, on certain conditions, which have been fulfilled, we request you to hand over to said Benner his notes which are in your hands. —

                    "Yours truly, — J. N. Dennison & Co."

Also an order upon his attorneys at Augusta, as follows: — "Having made an arrangement to discontinue our suit against Washington Benner, on certain conditions which have been fulfilled, we request you therefore to cause said suit to be discharged.          "Yours truly, — J. N. Dennison & Co."

The plaintiffs offered these orders to Hanson, who refused to receive them, claiming that as Washington Benner had paid the $550, the notes of John Benner should be delivered for the use of Washington. To this course, the plaintiffs would not assent. Hanson then made a tender to the plaintiffs, of which they gave him a written acknowledgment as follows: —

"Boston, Feb. 28, 1849.

"We acknowledge, that J. B. Hanson on this day tendered us $550; also that he tendered us a paper signed by Washington Benner, of which the following is a copy: —

"February 20, 1849.

Received of J. N. Dennison & Co. one dollar in full of all claims and demands of every description, and the action now pending in the District Court in Lincoln county, *J. N. Dennison & Co.* v. *John Benner & trustees*, is to be entered neither party both as regards principal and trustees, and the action *J. N. Dennison & Co.* v. *myself*, in the District Court, M. D. Kennebec county, is to be entered neither party.

(Signed,) "Washington Benner."

It was agreed by the parties, that if the foregoing facts constitute a defence, the plaintiffs are to become nonsuit; otherwise the action is to stand for trial.

*Shepley & Dana*, for the plaintiffs.

The paper signed by the plaintiffs, if it is to be treated as a binding contract, was simply a consent to take a part of their debt in discharge of the whole, upon conditions never performed or offered to be performed. In giving up so large a portion of their debt, they wished to be free from all danger or necessity of further litigation or expense. They therefore required "an obligation from the adverse *parties* to forbear any suit or trouble to them."

The only *obligation* that was offered was the informal receipt of Washington Benner, and his agreement that the suit against John Benner and trustees, should be entered "neither party." It does not appear that either John Benner or the trustees were consulted, or that they consented to the ar-

rangement, and nothing prevented them from ignoring the settlement, and obtaining heavy costs against the plaintiffs.

When informed that the money and papers were ready, the plaintiffs expressed a willingness to receive the same as they had agreed, and sent to Hanson their orders upon their attorneys. But when they discovered that, instead of treating with their debtor and discharging *him*, they were called upon to deal with speculators, and to sell John Benner's note without his knowledge or consent, and this too without any offer of the obligations insisted upon in whatever agreement there was, they very properly refused to deal further with this Hanson. If they were bound by *any* agreement, this step demanded by Hanson was no part of it. They took the only safe course. They were bound to no other, and the action should stand for trial.

*Morrell,* for the defendant.

The paper signed by the plaintiffs constituted Hanson their agent, to settle with the Benners and to discharge their claims. So it was meant. So Hanson understood it, and acted upon it. After Hanson's return to Boston, they recognized his doings in their behalf.

Upon this construction, the only question that arises is, whether the terms imposed in the instrument have been complied with by the defendant.

"Payment" of the sum stipulated for was made within the time mentioned (the 20th February,) and it was agreed, as stated in the paper signed by Hanson of that date, and received and accepted by the "adverse parties," that the suits then pending could be entered neither party. Washington Benner also gave a written "obligation" or release of all claims.

There is no complaint that the suit of Jno. Benner has not been disposed of as agreed, nor that the defendant has not been ready so to dispose of the suit against him.

But it is argued, that the terms of the plaintiffs' agreement required an obligation from "the *adverse parties* to forbear any suit or trouble," and that these terms have never been complied with.

What sort of obligation does the instrument provide for? An obligation in *writing*, under hand and seal? The instrument does not in terms provide for an *obligation in writing*, and the language employed does not necessarily, nor ordinarily imply an agreement in writing. If the plaintiffs will insist upon a literal and strict construction of the instrument, they are entitled to that, but to no more.

But what did the plaintiffs intend? It is reasonable to suppose, that they intended, when the claim was "settled and suit discharged," to have such obligation from the Benners, either verbal or written, as would free them from future trouble. Such indemnity they were fairly entitled to, and they *have got it*.

What did the case require? The plaintiffs had a suit against John Benner on his promissory notes to them. It will not be contended that the plaintiffs, upon the settlement of those notes and the suit founded on them, needed or expected a written obligation from him "to forbear any suit or trouble on account of proceedings against him." By the voluntary settlement of the demand, he had waived all claim for cost and that difficulty would be fully met by the verbal obligation for the arrangement of the suit.

But it is said there were trustees, and "nothing prevented them from claiming cost." The case does not show that the trustees were in a position to claim cost, or were entitled to it, and if they were, the answer is, it is not against the *payment of cost* that the "obligation" was to provide; it was "to forbear any suit or trouble," &c. Moreover the trustees are not "the adverse parties" named in the paper of Feb. 15, who were to give an obligation to forbear. The plaintiffs' proceedings against them were not of such a character as made it necessary to provide for it.

But we are not left in doubt as to what sort of obligation the plaintiffs expected and required. Hanson, having settled and discharged the claim and suit against the defendant, returned to Boston and notified the plaintiffs of his doings. With the *knowledge* of what had been done by Hanson, and in *pur-*

*suance* thereof, on the 28th of February they write to their attorney in the suit against John Benner, and who had the notes, that " the conditions have been fulfilled," and request him to deliver up the notes. In this note there is a direct recognition of the settlement made by Hanson and of his authority to make it, and an express and unqualified admission that the conditions upon which the claim upon John Benner was to be compromised, had been fulfilled.

Now why is this suit not entered " neither party," according to the agreement made with Hanson ?

It is simply owing to some misunderstanding or disagreement between Hanson and the plaintiffs, in no way connected with the defendant, and growing out of matters not involved in, or connected with, the settlement of the claim against John Benner and the discharge of the suit against the defendant.

It seems that Hanson claimed to have the notes delivered for the use of the defendant. But the defendant, in the settlement and discharge, did not make the delivery of the notes a *condition* with the plaintiffs. He gives them an unconditional release, and pays over to their agent the money unconditionally. The defendant never has, and does not, claim that Hanson shall hold the money and release until these notes are delivered for his benefit. The money and the release are unconditionally in the hands of Hanson, who was the plaintiffs' agent, and the defendant claiming nothing from either ; why then should not this suit be discontinued ?

So far as appears from the terms of the settlement ; so far as appears from the statement of facts ; and so far as depends upon the defendant's disclaimer here, Hanson acted without the authority, knowledge or assent of the defendant, in what took place between him and the plaintiffs. The defendant had got his discharge, and should not be prejudiced by any acts of Hanson.

But it would seem that Hanson did not refuse to pay over the $550, and deliver the obligation of the defendant to the plaintiffs, unless they would deliver the notes for defendant ; for although he *proposed* to do so, yet when it was declined

Dennison v. Benner.

by them, he immediately offered and tendered both money and obligation, which the plaintiffs refused, and which they can now have if they choose.

*Shepley & Dana*, in reply.

The attempt to foist Hanson upon the plaintiffs, as their agent, does violence to the case. The paper given him by the plaintiffs will bear no such construction. He came to them upon an errand of his own; all his desire was to better himself by obtaining an easy discharge for his debtor from the plaintiffs. This object was known to them and, of itself, would prevent their authorizing him to act at all for them in any trust relation. He was acting in concert with this defendant, who is the only one he calls upon in Maine; who is the only one that signs any obligation; who is the one that furnishes the funds, and demands to be subrogated to the plaintiffs' rights against John Benner. In the face of all this, the pretence that he was all the while *our* agent is unfounded, and is caused wholly by the exigencies of the defendant's case.

It is argued that the defendant has done all that was required, and has made no claim against the plaintiffs. But this affords no reason, if it were so, why the plaintiffs should have accepted at the hands of Hanson a less complete discharge of claim or suit than was stated in their writing. Besides, the suit against J. Benner and trustees is still pending, and they have not yet had any opportunity for claiming costs against the plaintiffs. John Benner never consented that the suits should be entered 'neither party,' nor has he given any agreement that he would not *claim* cost, if the plaintiffs were to do what the defendant demands of them.

SHEPLEY, C. J. — The paper signed by the plaintiffs and bearing date on February 15, 1849, cannot be considered as constituting J. B. Hanson their agent. If Hanson could not induce the Benners to accede to the proposed terms of settlement, he could not be required to carry that agreement into effect. The plaintiffs could not have maintained any action

against him upon it. That paper is what it purports to be, an agreement or offer of the plaintiffs, to settle their suits against the Benners upon certain terms, and placed in the hands of Hanson, that he might avail himself of the benefit of it. It would become binding upon the plaintiffs upon an acceptance and performance by Hanson. He insists that there has been a performance. The money to be paid was tendered within the stipulated time. A paper signed by the defendant acknowledging the reception of one dollar " in full of all claims and demands of every description," and stating that an entry of neither party was to be made in the plaintiffs' action against John Benner and trustees with respect both to principal and trustees, and that a like entry was to be made in their action against himself, was also tendered. No other paper or proof appears to have been presented.

The plaintiffs, by their agreement, were entitled to have " an obligation from the adverse parties to forbear any suit or trouble to us on account of proceedings against them."

Trustees are parties to a suit, and were adverse parties to the plaintiffs in their suit against John Benner. If the parties defendant in that suit could recover costs against the plaintiffs, it would occasion trouble to them on account of those proceedings. No document or proof was presented to the plaintiffs showing, that those defendants, either principal or trustees, had agreed to an entry of neither party or to relinquish their claims to costs.

The defendant in this action and Hanson assumed to make such an agreement for them, but it does not appear that they had any authority whatever to do so. Nor does it appear, that the suit against John Benner and trustees, has ever been discontinued or adjusted in any other manner, or that the trustees have been discharged without costs, or that the plaintiffs are not liable to pay costs to them.

There does not therefore appear to have been a substantial compliance by Hanson with all the material terms offered by the plaintiffs.

It does appear, that they stated in the orders prepared for

their attorneys, that the conditions of their agreement had
been fulfilled.   They must have done so under a misappre-
hension of their rights or from a willingness to waive a more
strict performance, if that arrangement was perfected.   Han-
son declined it; and their erroneous statement or waiver
founded upon it fell with it.   Being part of an arrangement
never completed the plaintiffs cannot be bound by that declar-
ation.                      *The action is to stand for trial.*

WELLS, HOWARD and HATHAWAY, J. J., concurred.
RICE, J., concurred in the result.